in numbers 24, 2180 and 24, 2182. United States v. Silva. Mr. Fiddleman. Thank you so much. Good morning, your honors. May it please the court, Jacob Fiddleman for the United States. Judge Willis had more than a substantial basis for concluding after reading the entirety of the warrant application in this case that there was a fair probability that Silva's cell phone would contain evidence of criminal activity. The warrant application included case-specific facts that served as a sufficient anchor for the affiant's training and experience based expertise. And Judge Willis reasonably combined that information with common sense inferences to conclude that it was fairly probable that evidence would be found. So can I ask you to articulate for us, because this is going to be a line drawing case, right? What sort of affidavits you would characterize as so bare bones that law enforcement could not in good faith rely on it? Yes, your honor. The Fifth Circuit in the Morton case has helpfully cataloged a number of historical affidavits that have been found by the Supreme Court to be bare bones. And they are essentially empty affidavits. They are affidavits that contain only unexplained legal conclusions. For example, an affidavit that says, based on my information and belief, the defendant committed the crime and there will be evidence in the place to be searched. Or an affidavit application that contains nothing more than the subject's biographical information and a statement that evidence will be found. That would be conclusory, right? If it just says, I believe that there's evidence in this location. That's right, your honor. You're supposed to decide whether there's a fair probability that there's going to be evidence at that location. And it's conclusory if you just assume that conclusion. That's exactly right. The district court here seemed to think that the officer's training experience was itself just an allegation that needed to be substantiated with facts, right? Right. But we have said, you know, you're allowed to make determinations based on your training and experience. So that itself was evidence. That's exactly right. We completely agree, your honor. The bottom line is that Detective Boyer's training experience fell comfortably within the category of information that the Supreme Court and this court have repeatedly authorized magistrate judges to consider. And that's because probable cause is a common sense, all things considered standard. So like I get maybe that you might need training experience to decide that gang members often take photos with symbols and guns and so on. But you know, that somebody uses a phone to communicate with other gang members. Like, did you need somebody's training experience to tell you that? I think it would have been fair game for the magistrate judge to draw her own common sense inferences about human behavior, even absent specific training and experience-based expertise offered by a long-running gang investigator. But whether it's viewed as a common sense inference that the judicial officer can draw or expertise provided by the affiant, it was present in the overall mix of information that the judge could consider. And that served to create- What I'm interested in is where does common sense or this common sense idea doesn't swallow the rule, right? If we are going to say, you know, phones are ubiquitous, people are using phones all the time, like when is the scenario in which somebody couldn't get a warrant? So there are plenty of individual circumstances in which the probable cause of criminal activity may not lead to any conclusion that there's likely to be evidence in the phone. And some of the examples offered by the appellee might suffice. So for example, a jaywalking investigation. There may not be any reason to believe that a phone found several months later will contain any evidence. The bottom line is, although there are of course two components- As much as jaywalking, but if Silva had committed the crime by himself, he wouldn't necessarily assume there were communications that reflected it, right? Certainly, Your Honor. That's right. The determination is he made a lot of communications with other gang members. That's right. And it may be that even where a warrant can be obtained, the scope of the information that can be seized is much narrower in many circumstances. Even if somebody commits the crime by themselves, or by himself, you can have a poisoner who would do Google searches to find out what works and what doesn't. It's difficult, aside from the jaywalking example, it's kind of hard to find an offense that would not plausibly involve consulting a cell phone. Well, I- In other words, the question, and you make a fine argument, you may be proving too much. Well, we're simply asking for application of the well-established probable cause standard, and that defers to magistrate judges to make the assessment in the first instance on the totality of the circumstances. We're not asking for any sort of per se rule that the government can always search a cell phone. It's always up to the individual reviewing judicial officer's assessment of the facts and circumstances in that particular case. So the standard is there's a fair probability that we're going to find evidence of a crime in the location to be searched, right? That's right, Your Honor. And it's not really the judge's job to say, well, a lot of people use cell phones, and I really worry that you're going to search too many cell phones. And so therefore, I'm going to adjust the standard in order to make sure that cell phones can't be easily accessed. That's right, Your Honor. And fundamentally- And do you think that's what the district court was doing here? Well, I'm not prepared to get into the district court's head, but it certainly appears that the district court applied, based on what we submit respectfully as a misunderstanding of the Supreme Court's guidance in Riley, applied a heightened standard for cell phones and considered ramifications of allowing the warrant to stand. Right. So the district court says that there is probable cause to decide that the alleged pattern of racketeering activity makes it likely that Silva would have communicated on countless occasions with other alleged members of the Dub City gang, right? That's right. So there's probable cause to believe that there's lots of communications with other members of the gang. And he's arrested with a cell phone on his person, right? Yes, Your Honor. And so the district court is puzzled as to what he used to communicate with the rest of the members of the gang, right? And it seems like a pretty fair inference that it would have been the cell phone on his person. That's right, Your Honor. And this is not a circumstance where multiple devices are recovered from inside a home and it's unclear whose device is whose. There was a single device on his person. And it's more than just that he was a member of a gang. He was, at the application, established that his criminal activity involved wire fraud, involved bank fraud involving fake identities. And he was arrested with, alongside the cell phone, a fake identity and a bank card in that false name. And so the totality of the circumstances here gave the reviewing judicial officer more than a reasonable basis to conclude that the the district court improperly heightened the standard for probable cause. Because we have to put something on paper that provides guidance. So how would you say the district court heightened? So I think there are two fundamental ways, Your Honor. The first one is that the district court mistakenly described the standard, the nexus requirement, as requiring evidence that the device was used in furtherance of the crimes. They'll say that that was just an artful use of the word, right? I mean, you, in fact, in your brief, had something that suggested close to that, right? I mean, I think, so let's not, and let's presume that that's not the issue, okay? But if you think to the extent to which they might have, okay. That's fine. Certainly. And the second way, Your Honor, is by imposing a technical requirement about the type of information that has to be included in a warrant in order to satisfy the overall conclusion that there's a fair probability that evidence will be found in the phone. Specifically, evidence specifically that's not training and experience, right? And that's not law enforcement expertise. Part of the part that I found so interesting is that both sides gesture at the idea that this is not a question of first impression. But do we actually have a case squarely holding that there's a sufficient nexus between criminal conduct and the place to search, or that nexus is established by the appearance experience? So there are, Your Honor. But I would say that there are also more facts in this case. It is not purely training and experience. That was the error that we are identifying in the district court's reasoning. But we think that here there are at least seven facts that combine with the In terms of the cases, there's United States v. Riley, United States v. Cruz, United States v. Benevento, United States v. Velarde, United States v. Donald. But do you agree that with the characterization that the way that the affidavit worked was it said, we have probable cause to believe that he committed these crimes. And then based on my training experience, usually when people engage in crimes of this type, they will use electronic device to communicate with other gang members or to take photos or to facilitate flight from law enforcement or financial crimes, right? So it's true that there aren't case specific facts showing that he used the cell phone in the commission of the crime, right? That's right. Although there are... The condition court's mistake would have been treating the officer's training experience as allegations that need to be substantiated with facts as opposed to facts themselves, right? An investigation can proceed by saying, okay, this person committed this type of crime. And in my experience, this is how it's normally done. And so I'm going to look there for evidence of the crime, right? That's right, Your Honor. We agree. And so even if we don't, we have cases about these specific fact patterns, we have, it is well established that you are allowed to, that we've said training experience is an important factor for a magistrate judge to consider in issuing a warrant, right? That's right, Your Honor. So if you had evidence that he used the cell phone in the commission of the crime, you wouldn't need to have training experience. You just said he used the cell phone, therefore we should search the cell phone, right? That's right. There are plenty of warrant applications. It would make the training experience kind of redundant. It wouldn't even be evidence. I think that's right. It would supplement and be persuasive. But fundamentally, there are plenty of fact patterns, and the acolyte has identified several hypothetically, where there would be very clear evidence that the phone was an instrumentality, that it had been directly used in furtherance of the crime. But that's not necessary. All that's necessary is a fair probability that it will contain evidence. What I'm saying is if we take seriously the district court's position that you always need to have evidence that the phone was used in the commission of the crime or was used in proximity to the crime such that there would be evidence on it, then you never would have a need for the training experience evidence, right? And it sort of would render it superfluous. But we've said that it does qualify. There must be some circumstances in which you can rely on the training experience, right? I think that's fundamentally right. If you always required non-expertise-related facts, then it would, in most circumstances at least, certainly, render the training and experience superfluous. There could theoretically be cases where the training and experience goes to the scope of the seizures that are subsequently authorized. Wait a minute. I'm sorry. I thought you had said earlier in your argument that you weren't relying just on training and experience. It was a training and experience plus something else. That's right, Your Honor. Yeah. OK. So what you just said made it sound like you were walking that back. Can you clarify that? No, Your Honor. I was simply, I think, agreeing with Judge Venasci's question about the impact on training and experience if concrete facts were always required. In this case, we submit that the warrant application did include facts about Silva's conduct that themselves led to a reasonable conclusion that the phone would contain evidence. And those were supplemented by the training and experience. Right. So the case-specific facts are if he had just submitted an affidavit that said, in my training experience, people who participate in gangs use their cell phones to coordinate or whatever, but there are no allegations about him participating in a gang, then you'd say, well, that's not enough, right? But you're saying the case-specific facts that show what you have probable cause to believe he did in combination with the training experience about how those particular kinds of crimes are often carried out, that's what creates probable cause. I think there's also more than that, Your Honor. Here, the information reflected that the types of crimes that he was engaged in themselves involved communications and involved electronic activity. So, for example, wire fraud as a predicate involving scams and fake identities inherently involves electronic communications, making it reasonable for the judicial officer to conclude that the individual's electronic device would contain evidence of those crimes. There's also a number of specific examples of Silva's gang-related criminal conduct in which it involved communications with other individuals in the course of criminal activity concretely, beyond mere gang membership. And then, on top of that, there's Silva's status as a fugitive from a state court case at the time of the seizure of the cell phone, which itself allows the magistrate judge to reasonably conclude, at a minimum, that his cell phone on him at arrest is going to contain evidence of that flight from justice. Because of the location data? Because of the location data and more, frankly. Reasonable inferences about communications during attempts to flee from the police. And moreover... The district court is worried that if you were to conclude, that you might be able to conclude that whenever you have probable cause to believe that somebody engaged in communications with other co-conspirators, you'd be able to search the cell phone because that's what people use for communication. Is that an implication of your argument and is that even worrisome? So I think it's not necessarily a direct implication on the facts of this case, but I do think from a broader perspective, there's nothing inherently troublesome about a conclusion that where there is probable cause that an individual has engaged in coordinated criminal activity with other co-conspirators with whom they necessarily communicated, there is a fair probability that their communications device will contain evidence of that crime. Is there any limitation in this warrant or should there be in any warrant allowing cell phone access to the particular functions of the cell phone? So, unfortunately, based on the nature of advanced cell phones, it's very difficult to carve out different portions of the cell phone to search. There could, of course, be circumstances where the probable cause, for example, only extends to communications or only extends to location data. And so in those circumstances, of course, the particularity requirement would insist... But here it extends to everything. Here we submit it fairly extended to the entire list of a variety of categories of information. Although the warrant application in this case still says we're going to be careful about searching slowly and take a peek at different files and so on, so as only to focus on the particular crimes alleged, right? Absolutely. So you could do it either way. You could limit the scope by saying we're going to do it cautiously by taking a slow peek at different parts of the cell phone and then if we notice something that's outside the scope of the crimes charged, we'll get a new warrant or we'll do something else, right? That's absolutely right. You could also have a case, I suppose, if there's probable cause to believe there are communications on the phone to say you can look at the communications but you can't open his dating app or his bank app or whatever. Like those would be different parts of the cell phone, right? Yes, Your Honor. And were there challenges to the scope of the warrant in this case? There were not. Okay. How would you define nexus? Like the nexus... I mean, you're not... My understanding is you're not quibbling with the fact that the district court said that there needed to be a nexus and you say that it doesn't mean use. Okay. So how would you define it? So I think the term nexus is shorthand for the concept that the warrant application has to establish probable cause that evidence of criminality will be found in the particular place to be searched. So it's... Although... So you're saying then that's collapsing the probable cause with the nexus. I do think that they are two sides of the same coin because it is a holistic inquiry. The question for the magistrate judge is whether there is probable cause to believe that evidence of criminal activity will be found in the place to be searched, which inherently requires first probable cause to believe that some criminal activity has occurred, and second probable cause to believe that evidence of it will be found where law enforcement wants to search. But it really is one inquiry. Will evidence of criminality be found in the place to be searched? And so when courts are breaking it down into those two halves, probable cause of criminal activity and probable cause that evidence of that activity will be found in the place to be searched, the latter of those two halves is referred to as the nexus requirement. But fundamentally, they are not distinct inquiries that need to be addressed in separate sections of the warrant application where facts from one can't be considered in the other. It's a totality inquiry. And that's particularly true, not in this case, but in circumstances where the owner of the place to be searched is not implicated in the criminal activity. So there are plenty of circumstances where there would be reason to believe that evidence of criminality would be found in a And so it's a holistic inquiry. It's not asking whether the subject committed a crime and then whether his phone can be searched. Okay. Do you want to say something about the good faith exception? Yes, Your Honor. Thank you. Fundamentally, we submit that the good faith exception is not a close call here. As we outlined in our briefs, the circumstances in which a warrant is considered bare bones, rendering it unreasonable for a law enforcement officer to believe the judge's judicial authorization, are extremely narrow. As I mentioned earlier, they fundamentally include only empty and totally conclusory affidavits. And here, the warrant application looked nothing like that. The law enforcement officer brought his facts and his expertise to a judicial officer and urged reasonable common sense inferences. And the judicial officer drew those inferences and ex ante approved of the search. And nothing more is required under the Supreme Court's or this Court's precedent. So what does a bare bones affidavit look like if it just says, we believe that there's going to be criminality on the phone, but there's nothing to substantiate that? Yes, Your Honor. And the Fifth Circuit has collected all of them. So for example, in one example, the application said nothing more than the agent, quote, has caused to suspect and does believe that certain merchandise has otherwise been brought into the United States contrary to law. And that said, merchandise is now deposited and contained within the home to be searched. It gave no explanation whatsoever about how or why the affiant thought that. Therefore, rendering impossible. If they had said, based on my experience, I believe, would that have been enough? Based on my training and experience, if they had added right that, would that have been enough under your standard? No, Your Honor. Because stating based on my training and experience, I believe a crime has been committed and evidence will be found in the home is not detailed enough. It's very hard to imagine those types of short hypotheticals because warrant applications are often more factually detailed. Here, our application was quite lengthy. And facts are the bread and butter of the probable cause inquiry. But it's fundamentally affidavits that look like that, that do not in any way. So that affidavit you just described. So if, in fact, it said that here's a bunch of factual information that show probable cause to believe that this defendant committed this specific type of crime. And based on my training and experience, that particular type of crime is committed in these ways. And so therefore, you would expect to find evidence in this location. You're saying that would be fine. Absolutely. Because it would allow for good faith. I mean, looking at that wouldn't show, wouldn't be able to say, well, that's obviously a bare bones affidavit. That's right, Your Honor. The good faith exception applies where law enforcement brings its facts to the judicial officer, including training and experience-based expertise, urges inferences, and the judge adopts them. If the judicial officer is found later to have erred in authorizing the search, that is quintessentially not sufficient to grant a motion to suppress. It is only where law enforcement acts with gross disregard for constitutional rights by bringing, essentially, an empty affidavit and getting it rubber stamped. I'm just explaining why. Right. That's right, Your Honor. We're under the third of four exceptions to the good faith exclusionary rule. So this is the one in which any reasonable law enforcement officer should have known that the affidavit was insufficient. Of course, there are Frank's issues, knowingly misleading the judicial officer, circumstances where the judicial officer has wholly abandoned his or her judicial role. But here, where we're asking the narrow circumstance of when is a that the authorization from the judge was useless. Now, I understand that you dispute this characterization, but the district court seemed to think that, okay, you're putting forward facts to show his probable cause that he committed a crime. And then there's just a general allegation based on training experience that criminals use their phone to commit crimes. Let's say it said that. Let's say there were a lot of facts that just showed that he committed a crime, and then somebody asserted at the end, people use their phones a lot, and so he probably used his phone to commit the crime. And so therefore, we want to search the phone. Would that be a bare bones affidavit? So even if there were a lot of detail about the actual crimes. So fundamentally, I don't think it would, Your Honor. But I would say, and I know it's inherent in Your Honor's hypothetical, but that's not this case. And I think it may present perhaps a more difficult question that the court doesn't need to answer in this case. But fundamentally, in that circumstance, the law would present their facts to the judicial officer and then presented them for the judicial officer to draw whatever reasonable common sense inferences the judicial officer thought were appropriate. So a reasonable officer who's looking at that kind of affidavit would say, all right, there's a lot of facts in here that establish probable cause that he committed a crime. And a magistrate judge determined it was a fair inference that we find that the phone somehow had evidence of the crime. And if that was issued by a magistrate judge, it's not obvious to me that that was wrong. And so therefore, I can rely on it. That's exactly right, Your Honor. And that is the scope of the good faith exception. The policy rationales behind the good faith exception, which are when the rule applies, is to ask whether law enforcement did something that needs to be deterred by imposing essentially a sanction on the truth-seeking function of the criminal justice system. And so in that circumstance, we submit the law enforcement officer did exactly what they were supposed to do. They brought what they had to a judge. And the judge said, you can search. But that's true even in the case that you described earlier, where it just says, based on my training and experience, I think a crime has been committed and there's going to be did not bring the facts that he had available to a judicial officer. He is just saying, take my word for it. Sign this warrant. And that's the circumstance where the Supreme Court has said it's no good. Okay. Thank you, Mr. Fiddleman. Your time for rebuttal. Thank you. Good morning. My name is Florian Miedel and I represent the appellee, Bruce Silva. We are here because the government seeks to overturn a thoughtful and well-reasoned decision by an experienced district court judge who has reviewed literally hundreds, if not thousands, of warrant affidavits and found this one to be woefully deficient. And that's because it was. We're talking about a two and a half page factual affidavit, one and a half pages of which provide certain facts about why there was probable cause to believe that Mr. Silva committed crimes. And then simply one page of generic boilerplate language about why people use phones or why gang members use phones. And that does... Wouldn't it be plausible to think that people cannot conduct crime in a gang manner without communicating regularly and frequently and that really the only way to do that is by phone, by cell phone? Yes, Your Honor, but it's universally true. Everyone communicates by phones. Everyone communicates, but not everybody functions in a gang. Right, but I think that what happens is if you're using something that is so universal, like saying, you know, my training and experiments tells me that people put money in their wallet and therefore we can search wallets, right? If it's something so universal, then it's meaningless when applied to... Well, you kind of shifted the argument. I mean, you were just saying a moment because there weren't enough facts. Now you're saying it's so obvious that they would have used the phone that like that would just apply to everybody, right? Doesn't that just mean that it really is a fair inference and a fair probability that there's going to be evidence on the phone? You're just saying we should make the standard higher because we don't like the result that it's going to lead to a lot of searches of phones. No, Your Honor. What I'm saying is that what is required are facts, not assumptions about how people behave. That's what I don't quite get. So we have said that the officer's training experience is an important factor to be considered by the magistrate judge, right? Generally, yes. So that's not... Those are facts, right? What the officer's training experience tells them about how crimes are committed, those are facts. Well, in this case, they're not facts. In this case, it's simply that an officer says, we know that gang members use phones. I mean, I don't need to be a detective to know that. I think part of what is challenging is that there's a difference between saying people use their phones to coordinate with each other and between people saying people in a gang who are as a function of being in the gang are coordinating, so the phone might have it there. Is that not... I think you would say that that's an inadequate limiting principle, but can you explain why? Well, I think all that was necessary here. They had an informant for this warrant. For the informant to have said, I was part of this gang, we used phones all the time. We used phones to take pictures of ourselves, that sort of thing. Well, right, but doesn't that then conflate the use standard with the containing evidence standard? Not necessarily, Your Honor. I think that... Okay, well, I'm really interested in this, so it would help me if you articulated very specifically what you think the standard is that would help your client out, but at the same time not complete use with containing information. Right, I think that you were right when saying that Judge Gardefee did not use some different standard and only require use. I think that was just his way of saying what he, in fact, said in his opinion, which is that the phone has to contain evidence. Right, and they used the word instrumentality. Everybody was using use shorthand. Right, and phones can, I suppose, contain evidence even if they weren't used as part of the crime in the sense that evidence could be downloaded onto a phone that wasn't used during the crime, but again, there were literally no facts in this case about the phone at all, in fact. So you're saying the nature of the crime doesn't matter at all? The fact that it was gangs, the fact that it was financial crime, none of that is material? Well, I think it could matter. First of all, again, the district court found that there was no probable cause to believe, based on one conclusory sentence, that there were financial crimes, but secondly, for example, if you had a computer crime or some complicated financial fraud using instruments that were unusual, a law enforcement agent might be able to say, based on my experience investigating these kinds of cases, these are the specific ways that people do things, but to apply it to essentially a group of young men who have phones and use them to communicate with each other is too generic. Okay, so maybe, go ahead. Sorry, I don't understand why it's generic. I mean, you told me a moment ago, people use phones. I don't need an expert to tell me that people use phones to communicate, and then you told me that the government had to bring forth a witness to say, I saw them use phones when they were doing crimes. Do you really need a witness? Expert testimony is not enough, but you need an actual witness to say they use phones when they communicate? Well, the Fourth Amendment does still require some particularity based on facts. Right, so we have facts that they communicate, right? So Judge Garnafay agrees. He says that they communicated, right? This alleged pattern of racketeering activity makes it likely that Silva would have communicated on countless occasions with other alleged members of the Dove City gang, right? I think that's an assumption, a reasonable one. So you agree that there's probable cause to believe that there were lots of communications between Silva and... I don't, because there are no facts in the affidavits that say that. That is an assumption that one can make about the fact that people communicate with each other. When you're engaged in racketeering activity and you're participating in enterprise, you don't think it's a reasonable inference that you had lots of communications? Well, but in a warrant affidavit, you need somebody to say that, right? You need somebody to say that there were communications between these parties. Okay, maybe you don't agree that he communicated, but let's take, just because I'm evaluating what the district court did, so let's take for granted the idea that the district court found that there's probable cause to believe that there are lots of communications. And there's a cell phone found on the defendant, right? People use cell phones. Wouldn't it be a reasonable inference that if we're looking for lots of communications that occurred, they might appear on the cell phone that was found on this person? Well, a couple of things, Your Honor. First of all, the cell phone was found months after the allegations described in the affidavit. So there's no reason to believe necessarily it was the same cell phone. Well, the affidavit includes not just the racketeering activity, but also his flight from law enforcement and he was found while being a fugitive. But the flight, the flight is the red herring in this case. He was not, the phone was not used for location monitoring. Well, regardless, I mean, the point is, if there's probable cause to believe he engaged in communications, and so therefore a record of those communications would be evidence of criminal activity. He's found with a cell phone on his person, so we know he has a cell phone and uses a cell phone. Why isn't a reasonable inference that he would have used that cell phone to make the communications? Well, I think that's... I mean, how else would he have done the communications? Sure, but I... Did he have a fax machine on him when he was arrested? No, but Your Honor, again, going back to the affidavit, it requires facts. Otherwise, it's an end run around Riley, right? Because if Riley says you have to have a warrant to search a cell phone because cell phones are so, such repositories of our private information, but if all you need for a warrant is to say he had a cell phone and we had probable cause to arrest him, then what's the point of a warrant requirement? Okay, but again, the issue is, the issue is not just he had a cell phone and people use cell phones. It's he had a cell phone, the particular crimes he was committed, or he is... The particular crimes we're concerned about involve crimes involving coordination and they involve crimes involving financial concerns and that he's a potential flight risk. So I know you dispute whether or not that was enough for the financial concerns, but why isn't the affidavit plus those three factors enough? The affidavit contains facts only about the probable cause to arrest, only about whether there was sufficient evidence that he committed crimes. It contains zero facts about why this cell phone would contain evidence. It has zero facts. We keep shuffling between the idea that you don't need a policeman to tell you that people use cell phones for these purposes and the fact that there's no evidence. I mean, it seems to me this affidavit would have the same force and effect if instead of saying, I've been a police officer for a certain number of years, I have extensive experience and it just said, I'm a grown up person who's lived in the world and I know how cell phones are used. And you really can't conduct crimes involving a gang without communicating. So I'm not sure that the sufficiency or the need for expertise matters very much. I agree. I think that the expertise here doesn't matter, but the problem is, I guess, the result is do we want a situation where we sanction a warrant affidavit based simply on a generic person saying people use phones and that's enough? Why wouldn't the fugitive status matter in terms of what might be on the phone? The government made this argument that, well, he committed a crime in 2019 and he failed to come to court in state court in 2021 and he was arrested in 2022 and so therefore the phone might contain evidence of consciousness of guilt of that 2019 crime. That's their only argument about why the flight would matter. And as the district court found- Well, flight is consciousness of guilt. But it's flight from a New York state case. He hadn't even been charged in the federal case. He wasn't aware of the federal case. So as the district court found, that is utter speculation about whether the phone might contain evidence of consciousness of guilt. There's no fact to support that. You are not asserting that there was anything deliberately misleading or fishy about the affidavit itself? I think that- Any misconduct by the police? No, I'm not alleging that, but what I am saying is that this court is no stranger to warrant affidavits. The judges in the Southern District are no strangers to warrant affidavits and warrant affidavits are applied for every single day in almost every federal case for the search of phones and they're routinely approved. This one was different. That is the point of this case, that this affidavit was different than all those other ones. Well, this one was approved. It's just that after the fact, another judge decided it was inadequate. A district court judge looking at it decided it was inadequate. I think it was an easy call for him and I would venture to say that if the magistrate judge had another chance to look at it, she might agree as well because- This question, let's say there was sort of more- You keep talking about how you don't need an expert to say that people use phones. Let's say it's something more particular. Let's say there's probable cause to believe that he was a member of this particular gang and he stole this particular type of item and in my training experience, whenever this gang steals this kind of item, it always turns up at a particular pawn shop because the gang has a relationship with that particular place and so based on that, my training experience will tell me we're going to find evidence of the crime if we go search that place. I don't know that he specifically went there but it's an inference from my experience with the gang. Would that be enough? That would be a closer call but in this case- Why would that be a closer call? Well, because at least he's referencing the specific gang that he supposedly has some information about. Here, he doesn't even do that. Okay, but in that circumstance, what that means is the training experience evidence about the officer's experience with the gang and with the type of crime is facts. Well- It's not just speculation. In that case- That's how an investigation works. You see a type of crime and then the investigators say, well, this is how it's normally carried out and so therefore, we'll look in these characteristic places for evidence, right? Yeah, I mean, if he said, I've investigated this particular gang, the Dub City gang, and the Dub City gang, all the members, what they do is X, Y, and Z, something specific. And then Silva did that too. Well, okay, that would be a closer call but here he says, generically, gangs use phones to communicate with each other. The fact that there aren't gangs that use fax machines or beepers or carrier pigeons to communicate and that everybody just uses cell phones, doesn't that mean that the allegation is going to look generic? Or sorry, the expertise is going to look generic but it's just the reality that they use cell phones to communicate. Which is why in that case, all they needed was the informant to put something in the affidavit about how Silva himself had been seen with a phone, used a phone during a crime or had a phone that was- This affidavit, as it was presented, was inadequate. Yes. But if they said, confidential informant number one told me that around the time of the crime, I saw Silva talking on a cell phone and therefore I know that Silva uses a cell phone, that would transform the whole thing. Not necessarily that, but if he said, I saw Silva using a phone talking, he talked to me, for example, on the cell phone or we communicated with each other on the cell phone, at least that would be some fact. Here there are no facts. Literally no facts about the phone. You agree that we've said that the officer's training experience is often an important factor to consider, right? Yes, but I've also- Then those are facts. When the officer says, based on my training experience, this is how the crimes are conducted. Those are facts. That's factual evidence. Maybe you're saying it's not enough. That's a different argument. But the idea that there's zero facts is just not right. Because if you have direct evidence that he used a phone, you wouldn't need the training experience and it would no longer be an important factor, right? So it wouldn't serve any function. There have to be some cases in which it serves some function. Yes, but Judge, I've cited numerous cases in my briefs, as have the amici, where courts have for decades in this district and elsewhere said that the training and experience alone is not sufficient for a nexus to provide probable cause to belief that- My hope is that we're not there because the government said that that is not what they believe. Is that plus the type of crime enough? And when you concede, there's a lot about the probable cause that a crime was committed. So you've got probable cause that a crime was committed and an expert saying X, Y, and Z plus the type of crime involved. Is that not enough? I think that in this case, at least, I could maybe think of particular, very unique crimes where that would be enough. But this is such a generic crime in the sense that we're simply saying that people who commit robberies and sell drugs and commit racketeering offenses use phones to communicate. That's just meaningless. Okay, but again, we're not talking about use. We're talking about contained evidence. Right, but there isn't even any facts that suggest that the phone contained evidence. Okay. You're facing a pretty unforgiving standard though, right? I mean, the government has to- the exclusionary rule is a last resort. We only use it when there's flagrant police misconduct, when we think it requires deterrence. And typically, when law enforcement relies on a magistrate's judge issuance of a warrant, we presume good faith exception because we don't expect them to question judicial officers. Can you walk me through how you would overcome each of those three things, please? Yes, Your Honor. This case, the court should agree with Judge Gardefee that in this case, the good faith exception does not apply. And that's because this warrant affidavit, and again, anyone who looks at this affidavit can see what is glaringly missing, was abundantly clear and bare-boned. Now, you had a discussion with the government about bare-bones affidavits, and I just want to say that- I'm sorry, it's not just that it's bare-bones, it's that it's so bare-bones that it was unreasonable for an officer to believe a judicial officer. So, can you tell me how that crosses from bare-bones to so bare-bones to be relevant? Well, it's not bare-bones in the section about the crime, right? It is, in my view, completely bare-bones in what matters in this inquiry, which is whether there is probable cause to believe that there's evidence on the phone. So, that should have been obvious to the detective. The scenario is not novel in the sense- Why would it be obvious to the judicial officer? Why would it be obvious to the detective? Well, because the rule is not, as you know, that as long as a magistrate judge signs off on it, there is no good faith. No, you're right. It's not a per se rule. And that's because sometimes judges who review hundreds of these things a week or whatever will just make a mistake. But in this case, the affidavit itself lacked what was necessary, and anyone, including police officers who have only a bare understanding of the Fourth Amendment should have known. In the recent case that this court decided in a summary order, which was cited by the government, the Pratt case, the court found good faith exception to apply, but it cautioned the government that the allegations in the affidavit were largely conclusory and ultimately concluded that it was only finding good faith because of the novelty of the issue. In that case, it involved particular computer files and how they might be assessed. And that is why the court decided the good faith would apply, because police wouldn't necessarily know not to rely on that. This scenario here is not novel in the sense that smartphones have been around for 20 years. Law enforcement cannot reasonably believe that they can circumvent Riley and search cell phones simply by making... Riley just says you need a warrant to search a cell phone. That you had a warrant to search the cell phone. Yeah, but they're circumventing in the sense that they're simply making, by simply making a boilerplate general statement about how gang members use phones is enough to get a warrant. And so that's really, that's all that's necessary. You were just telling me a moment ago, it's so obvious that people use cell phones to communicate that I don't need an F officer to even tell me that. So an officer who sees that a magistrate judge issued a warrant on the basis that we have all this probable cause to believe that he engaged in criminal activity that involves communication and coordination to flee from law enforcement and inferred that there'd be evidence on the phone of those kinds of communications, why wouldn't it be obvious to that officer? I mean, you're telling us that that's too general, we should protect the phone because it has a kind of sanctity and it's dangerous to have a rule that allows... But like the officer just looking at the face of that, why wouldn't the officer think, oh, the magistrate judge thought that was a reasonable inference that there would be evidence on the phone of the communications? Well, if the rule were that as long as the magistrate judge says it's okay, then we can rely on it, then yes, you'd be right. But that's not the rule. The rule is that there has to be... It's not at all what I just said. I didn't say it just because the magistrate judge said it was okay. I said the magistrate judge saw all of these facts showing probable cause that he engaged in crimes that involved communications and coordination and allowed the... And also expertise that gang members use the phones to communicate, and it's also a common sense inference. All of that put together, why wouldn't an officer say, well, that must be enough for the magistrate judge? What are you achieving in the deterrence? What I'm achieving... To say that the officer needs to do this kind of analysis that we're not even persuaded is necessary. You're saying, oh, well, the officer in the field should have seen this and realized it was plainly inadequate, and so we need to punish them for relying on it. Your Honor, because this is the reason why. Police officers and law enforcement provide warrant affidavits all the time that are fine, and they know how to do that. This one, they didn't. And if you sanctioned this warrant affidavit, essentially, this would incentivize shoddy investigations. Because this was a shoddy affidavit, it could have been so easily fixed, but it wasn't. And it was a shoddy affidavit, and to sanction that affidavit would simply substitute platitudes for evidence. And that's not, I think, what we all want. Okay. I think I have that argument. I don't mean to belabor this, but I'm just curious about it. You're saying it could be easily fixed, and you're saying it could be easily fixed if the confidential informant said, I saw him use the phone in the proximity of the criminal activity or in connection with it. That would be the fix? It might be one of several different ways that it could have been fixed. It could have been said that- But if that would be a fix, it kind of seems to me, since you're saying it's obvious people use phones to communicate, I don't need an expert to tell me that. Having a witness testify to it seems to me also just to operationalize a pretty obvious inference. So, I mean, is what's really doing the work here, you think it would be too permissive if we allowed the inference that people use the phones to communicate, and we should have a kind of heightened standard to avoid that result? That it would be too easy for police officers to be able to search phones? I'm not asking for a heightened standard. I'm asking simply for the standard to be applied, which is that facts are required in a warrant affidavit, not generalizations. Okay. Thank you. Okay. Thank you very much. Now we'll turn back to the government on rebuttal. Thank you, Your Honors. Excuse me. Thank you, Your Honors. Silva's counsel talked about assumptions being made, but another way to think about what Judge Willis did was draw reasonable inferences from the information presented to her, and that's precisely what this Court and the Supreme Court have routinely explained judges are supposed to do. Here, Silva was a years-long member of a group engaged in coordinated criminal activity, and specific examples of him engaging in coordinated criminal activity were provided to Judge Willis, as well as detailed facts regarding the seizure of the cell phone and other objects that were seized alongside the cell phone. So, there— What about this idea that it was a shoddy investigation because they should have had a witness be able to testify that he used the phone somehow in connection with the crime? Respectfully, the allegation that the investigation was shoddy is being made without any information about the scope of the investigation. The information was presented in a warrant affidavit to a judicial officer who could have refused to sign it if she thought that was a flaw. This Court's and the Supreme Court's precedent are clear that the judicial officer to whom deference is owed is Magistrate Judge Willis, who is making the initial determination, and so the question is whether or not there was a substantial basis for her conclusion that probable cause existed. The review of the— If there's probable cause to arrest for gang-related crime, it seems to me you're arguing that there's probable cause to search the cell phone. After all, how do you go about doing a gang-related crime except with other people in the gang and you don't communicate with them, you know, by smoke signals or carrier pigeon? In other words, are you not proving too much? I think in this circumstance there was evidence that Silva was engaged, in fact, in coordinated criminal activity and therefore had communicated, and the circumstances where he was arrested involved him being a fugitive at that moment, and I think Your Honor's question earlier was correct, which is that flight is consciousness of guilt, and that alongside the cell phone were seized additional tools of his coordinated criminal activity, a fake identity. I wouldn't say must have, but it was additional support for the reasonable inference that the cell phone contained evidence of the criminal activity. Does it matter that the cell phone was recovered from this person two and a half years after the racketeering, the underlying racketeering activity occurred? No, Your Honor, because the allegations in the warrant were that he is a member of the gang and had been for, I think, approximately 15 years, since the early 2000s. The fact that the specific examples of violence were dated the prior year does not undermine the reasonable inferences that Judge Willis drew in this case. The reasonable inference being that people use phones to communicate? That gang members involved in coordinated criminal activity used their cell phones to accomplish that criminal activity? I mean, sometimes, I mean, in principle, a gang might avoid using cell phones, right? I've heard of criminal organizations that use beepers in order to avoid speaking on a cell phone, so if there were some evidence that they were not using cell phones, would that change the case here? It might, or at a minimum, it might as to the scope of what could be reviewed and seized. Or if there was such evidence, it would have to be included in the warrant application in order not to mislead the magistrate. Fundamentally, yes, Your Honor. If there was clear evidence that a gang specifically did not communicate in any way electronically, hypothetically, a warrant application that omitted that and urged a common-sense conclusion would be misleading. Okay. Thank you very much, Mr. Fiddleman. The case is submitted.